# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER STOCHEVSKI, Derivatively on Behalf of Nominal Defendant SENTINELONE, INC., | )<br>)<br>)<br>) Case No. _____ |
| Plaintiff, | )<br>) |
| v. | )<br>) JURY TRIAL DEMANDED |
| TOMER WEINGARTEN, DAVID BERNHARDT, CHARLENE T. BEGLEY, AARON HUGHES, MARK S. PEEK, ANA PINCZUK, DANIEL SCHEINMAN, TEDDIE WARDI, and JEFFREY W. YABUKI, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| SENTINELONE, INC., | )<br>) |
| Nominal Defendant. | ) |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Walter Stochevski ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant SentinelOne, Inc. ("SentinelOne" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' (defined below) breaches of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding SentinelOne, legal

filings, news reports, securities analysts' reports about the Company, the securities class action *In re SentinelOne, Inc. Securities Litigation*, 4:23-cv-02786-HSG (N.D. Cal.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by Plaintiff on behalf of SentinelOne against certain current and former officers and members of the Company's Board (the "Individual Defendants")[1] for breaches of their fiduciary duties to the Company and its stockholders by between June 1, 2022 and June 1, 2023 (the "Relevant Period"), and violations of federal securities laws, as set forth below.

2.     SentinelOne is a cybersecurity company that pioneered the world's first purpose-built artificial intelligence ("AI")-powered Extended Detection and Response ("XDR") platform to make cybersecurity defense truly autonomous, from the endpoint and beyond.  The Company's Singularity Platform instantly defends against cyberattacks -- performing at a faster speed, greater scale, and higher accuracy than otherwise possible from any single human or even a crowd.

3.     According to its public filings, the Company's "Annualized Recurring Revenue" ("ARR"), the annualized revenue rate of the Company's subscription and capacity contracts at the end of a reporting period, is a key business metric.

4.     Throughout the Relevant Period, the Company and its top executives repeatedly touted the success of the Company, its Singularity Platform, and the financial success of the Company associated therewith, specifically the Company's ARR.

---

[1]  The Individual Defendants are Tomer Weingarten ("Weingarten"), David Bernhardt ("Bernhardt"), Charlene T. Begley ("Begley"), Aaron Hughes ("Hughes"), Mark S. Peek ("Peek"), Ana Pinczuk ("Pinczuk"), Daniel Scheinman ("Scheinman"), Teddie Wardi ("Wardi"), and Jeffrey W. Yabuki ("Yabuki").  "Defendants" means SentinelOne and the Individual Defendants.

5.      Despite these assurances, however, on June 1, 2023, after the market closed, the Company published a press release which stated that, among other things, "[a]s a result of a change in methodology and correction of historical inaccuracies . . .  we made a one-time adjustment to ARR of $27.0 million or approximately 5% of total ARR." In the same press release, the Company also revised its fiscal year 2024 revenue guidance downward from a range of $631 million to $640 million to a range of $590 million to $600 million.

6.      The Company also published a shareholder letter on June 1, 2023, where the Company stated, among other things, that:

> In light of the current macro environment, we expect [] lower usage and consumption trends to persist. Due to this new dynamic, we have changed the methodology for calculating ARR consumption and usage-based agreements to reflect committed contract values. This provides a cleaner view of growth for fiscal 24 and beyond. By making this change now, we expect ARR and revenue to be more closely aligned. ***As we reviewed the methodology, we also discovered historical upsell and renewal according inaccuracies relating to ARR on certain subscription and consumption contracts, which are now corrected.***
>
> Overall, this adjustment resulted in a one-time ARR reduction of $27 million or approximately 5% of ARR, resulting in Q4 fiscal '23 ending ARR of $522 million. We are applying a comparable estimated adjustment to the remaining quarters in fiscal year 23, which we believe is a reasonable approximation of the impact in those periods.

(Emphasis added).

7.      On this news, the Company's stock price fell more than thirty-five percent, or $7.28 per share, to close at $13.44 per share on June 2, 2023.

8.      As set forth herein, the Individual Defendants breached their fiduciary duties by issuing, causing the issuance of, and/or failing to correct the materially false and/or misleading statements and omissions of material fact to the investing public. Specifically, the Individual Defendants failed to disclose to investors that: (i) SentinelOne lacked effective internal controls over accounting and financial reporting; (ii) SentinelOne's ARR was overstated; (iii)

SentinelOne's guidance was overstated; and (iv) as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.      As a result of the foregoing, the Securities Class Action was filed against the Company and Defendants Weingarten and Bernhardt.  The Securities Class Action has exposed the Company to massive class-wide liability.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 10(b) of the Exchange Act (15 U.S.C. §§ 78j(b)) and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

11.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

12.      This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.      In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

14.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Company is incorporated in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### *Plaintiff*

15.     Plaintiff is, and has been at all relevant times, a shareholder of SentinelOne.

### *Nominal Defendant*

16.     Nominal Defendant SentinelOne is a Delaware corporation with its principal executive offices located in Mountain View, California.  SentinelOne's common stock trades on the NYSE under the ticker symbol "S."

### *Individual Defendants*

17.     Defendant Weingarten is Co-Founder of the Company and has served as Chief Executive Officer ("CEO") of the Company since the Company's inception in January 2013. Weingarten has served as President of the Company since November 2018 and Chairman of the Board since March 2021. Weingarten received $95,395,534 in compensation from the Company in 2022, and $13,522,362 in 2023. During the Relevant Period, Defendant Weingarten took advantage of the artificially inflated common stock, due to the Individual Defendants' false and misleading statements, and sold approximately $22,817,766 shares of his personal holdings of SentinelOne common stock.

18.     Defendant Bernhardt has served as Chief Financial Officer ("CFO") of the Company since September 2020. Bernhardt received $1,954,587 in compensation from the Company in 2022, and $4,718,320 in 2023. During the Relevant Period, Defendant Bernhardt took advantage of the artificially inflated common stock, due to the Individual Defendants' false and misleading statements, and sold approximately $840,573 shares of his personal holdings of SentinelOne common stock.

19.     Defendant Begley has served as a director of the Company since January 2021. Begley is Chair of the Audit Committee. Begley received $439,445 in compensation from the

Company in 2022, and $294,995 in 2023.

20.     Defendant Hughes has served as a director of the Company since May 2021. Hughes is a member of the Audit Committee. Hughes received $761,291 in compensation from the Company in 2022, and $284,995 in 2023.

21.     Defendant Peek has served as a director of the Company since May 2021.  Peek is Chair of the Compensation Committee and a member of the Audit Committee. Peek received $773,200 in compensation from the Company in 2022, and $296,995 in 2023.

22.     Defendant Pinczuk has served as a director of the Company since May 2022. Pinczuk is a member of the Nominating and Corporate Governance Committee. Pinczuk received $479,664 in compensation from the Company in 2023.

23.     Defendant Scheinman is Lead Independent Director of the Company and has served as director of the Company since September 2015.  Scheinman is Chair of the Nominating and Corporate Governance Committee and a member of the Compensation Committee. Scheinman received $351,128 in compensation from the Company in 2022, and $312,995 in 2023.

24.     Defendant Wardi has served as a director of the Company since May 2019.  Wardi is a member of the Compensation Committee. Wardi did not receive compensation from the Company in 2022 or 2023.

25.     Defendant Yabuki served as a director of the Company from May 2021 until April 24, 2023. Yabuki was a member of the Nominating and Corporate Governance Committee. Yabuki received $779,052 in compensation from the Company in 2022, and $284,995 in 2023.

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

26.     By reason of their positions as officers and/or directors of SentinelOne, and because of their ability to control the business and corporate affairs of SentinelOne, the Individual Defendants owed SentinelOne and its shareholders fiduciary obligations of trust, loyalty, good

faith, and due care, and were and are required to use their utmost ability to control and manage SentinelOne in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of SentinelOne and its shareholders.

27.     Each director and officer of the Company owes to SentinelOne and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

28.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of SentinelOne, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

29.     To discharge their duties, the officers and directors of SentinelOne were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

30.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of SentinelOne, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

31.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE,

the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

32.     To discharge their duties, the officers and directors of SentinelOne were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of SentinelOne were required to, among other things:

(i)     Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to SentinelOne's own Code of Business Conduct and Ethics;

(ii)    Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(iii)   Remain informed as to how SentinelOne conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

8

(iv)     Establish and maintain systematic and accurate records and reports of the business and internal affairs of SentinelOne and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(v)     Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that SentinelOne's operations would comply with all applicable laws and SentinelOne's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(vi)     Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(vii)    Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(viii)   Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

33.    Each of the Individual Defendants further owed to SentinelOne and the shareholders the duty of loyalty requiring that each favor SentinelOne's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

34.    At all times relevant hereto, the Individual Defendants were the agents of each other and of SentinelOne and were at all times acting within the course and scope of such agency.

35.     Because of their advisory, executive, managerial, and directorial positions with SentinelOne, each of the Individual Defendants had access to adverse, non-public information about the Company.

36.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by SentinelOne.

## SENTINELONE'S CODE OF BUSINESS CONDUCT AND ETHICS

37.     SentinelOne's Code of Business Conduct and Ethics (the "Code of Conduct") applies to the Company's "employees, contractors, consultants, agents, representatives, officers and members of [the Board]."

38.     In a section titled "Complying with the Law," the Code of Conduct states that:

> Everyone at the Company is expected to comply with the law. Laws can be complex and at times, even counterintuitive. Although it's impossible to know all aspects of every law, you should understand the major laws, rules and regulations that apply to your work. You should consult with our Chief Legal Officer if you are unsure or have any questions or concerns related to your work.

39.     In a section titled "Financial Matters and Business Practices," SentinelOne's Code of Conduct states that:

> You are expected to act responsibly and exercise sound judgment with respect to our finances and financial reporting. Investors rely on accurate and fair financial and business information to understand our financial results and make informed decisions. You may execute financial transactions only with authorization and in compliance with our policies. You also are expected to record and report all financial transactions and business information honestly and accurately, to comply with our system of internal controls and to follow applicable laws, regulations, and accounting practices.
>
> We regularly file reports and other documents with regulatory authorities, including the Commission. In addition, we may make other public communications, such as press releases, from time to time.
>
> Depending upon your position with the Company, you may be called upon to provide information to help ensure that our public reports and communications are

complete, fair, accurate and understandable. You are expected to use all reasonable efforts to provide complete, accurate, objective, relevant, timely and understandable answers to inquiries related to our public disclosures. Employees involved in preparing public reports and communications must use all reasonable efforts to comply with our disclosure controls and procedures. If you believe that any disclosure is materially misleading or if you become aware of any material information that you believe should be disclosed to the public, it is your responsibility to bring this information to the attention of our Chief Legal Officer. If you believe that questionable accounting or auditing conduct or practices have occurred or are occurring, you should follow the procedures set forth in our Whistleblower Policy.

40.     In a section titled "Commission Reporting and Financial Statement Preparation, the Code of Conduct states that:

> [The Company's] periodic reports and other documents filed with the Commission, including all financial statements and other financial information, must comply with applicable federal securities laws, and Commission rules. If you contribute in any way to the preparation or verification of our financial statements and other financial information, you must ensure that our books, records, and accounts are accurately maintained. You must also cooperate fully with our finance department, as well as our independent public accountants and counsel. If you are involved in the preparation of our Commission reports or financial statements, you must:
>
> ● Be familiar with and comply with our disclosure controls and procedures and our internal control over financial reporting.
>
> ● Take all necessary steps to ensure that all filings with the Commission and all other public communications about our financial and business condition provide full, fair, accurate, timely and understandable disclosure.

## SENTINELONE'S AUDIT COMMITTEE CHARTER

41.     SentinelOne's Audit Committee Charter states that the purpose of the Audit Committee is to assist the Board in fulfilling its oversight responsibilities relating to, "the Company's accounting and financial reporting processes and internal controls, including audits and the integrity of the Company's financial statements" and "compliance by the Company with legal and regulatory requirements," among other things.

42. In a section titled "Financial Statements and Disclosures," the Audit Committee

Charter states that:

The Committee will:

1. Prior to distribution to the public, review and discuss with management and the Independent Auditors, the Company's quarterly and annual financial results, earnings press releases and earnings guidance provided to analysts and rating agencies, and other public announcements regarding the Company's operating results.

2. Review and discuss the following with management, the internal auditors (if any), and the Independent Auditors, as applicable:

• the Company's annual audited and quarterly unaudited financial statements and annual and quarterly reports on Form 10-K and 10-Q, including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations," and recommend to the Board whether the annual financial statements should be included in the Company's Annual Report on Form 10-K;

• the results of the Independent Auditors' audit or review of the financial statements, and the Independent Auditor's opinion on the audited financial statements;

• all critical audit matters (CAMs) proposed by the Independent Auditor to be included in the Independent Auditor's annual audit report;

• any items required to be communicated by the Independent Auditors in accordance with the applicable requirements of the Public Company Accounting Oversight Board (the "PCAOB"); and

• any significant issues, events and transactions as well as any significant changes regarding accounting principles, practices, policies, judgments or estimates.

43. In a section titled "Internal Controls," the Audit Committee Charter states:

With respect to the Company's internal controls, the Committee will:

1. Review and discuss with the Company's management, its internal auditors (if any), and the Independent Auditors, and provide oversight over, the design, implementation, adequacy and effectiveness of the Company's accounting and financial processes, and systems of internal controls and material changes in such controls, including any control deficiencies, significant deficiencies and

material weaknesses in their design or operation.

2. Review any allegations of fraud that are disclosed to the Committee involving management or any employee of the Company with a significant role in the Company's accounting and financial reporting process and systems of internal controls.

3. Discuss any comments or recommendations of the Independent Auditors outlined in their annual management letter or internal control reports.

4. Periodically consult with the Independent Auditors out of the presence of the Company's management about internal controls, the fullness and accuracy of the Company's financial statements and any other matters that the Committee or the Independent Auditors believe should be discussed privately with the Committee.

5. Establish and oversee procedures for (a) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and (b) the confidential anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters. Oversee the review of any such complaints and submissions that have been received, including the current status and the resolution if one has been reached.

44.    In a section titled "Risk Oversight and Compliance," the Audit Committee Charter

states that:

The Committee will:

1. Review with management, including the Company's internal audit function, if applicable, the Company's major financial risks and enterprise exposures and the steps management has taken to monitor or mitigate such risks and exposures, including the Company's procedures and any related policies with respect to risk assessment and risk management.

2. Review with management the Company's technology, privacy, cybersecurity and other information technology risks, controls and procedures, including the Company's plans to mitigate cybersecurity risks and respond to data breaches.

3. Review with management the Company's risk exposures in other areas, as the Committee deems necessary or appropriate from time to time.

4. Review with management the Company's (a) programs for promoting and monitoring compliance with applicable legal and regulatory requirements, and (b) major legal and regulatory compliance risk exposures and the steps

management has taken to monitor or mitigate such exposures.

5. Review the status of any significant legal and regulatory matters and any material reports or inquiries received from regulators or government agencies that reasonably could be expected to have a significant impact on the Company's financial statements.

## SUBSTANTIVE ALLEGATIONS

*Background*

45.     According to its public filings, SentinelOne is a cybersecurity company that claims to have pioneered the world's first AI-powered XDR platform to make cybersecurity defense truly autonomous. The Company's Singularity Platform instantly defends against cyberattacks, performing at a faster speed, greater scale, and higher accuracy than otherwise possible from humans.

46.     The Singularity Platform provides organizations with a full suite of real-time threat prevention, detection, and remediation capabilities across all of their endpoints, cloud workloads, servers, operating systems, and user credentials. The Singularity Platform offers multi-tenancy and can be deployed on a diverse range of environments that the Company's customers choose, including public, private, or hybrid clouds.

47.     According to the Company's public filings, SentinelOne generates substantially all of its revenue by selling subscriptions to the Singularity Platform. As such, the Company claims that its "go-to market strategy" is focused on acquiring new customers and driving expanded usage of its platform by existing customers.

48.     The Company has three subscription tiers, which include Singularity Core, Singularity Control, and Singularity Complete.

49.     SentinelOne recognizes subscription revenue ratably over the term of each customer's subscription contract, which typically are for terms of one to three years.

14

50.    In addition to recognizing revenue ratably over the course of a subscription contract's term, SentinelOne uses ARR as a key business metric. The Company uses ARR because it is driven by the Company's ability to acquire new subscription and capacity customers and to maintain and expand its relationship with existing customers. The Company defines ARR as "the annualized revenue run rate of our subscription and capacity contracts at the end of a reporting period, assuming contracts are renewed on their existing terms for customers that are under contracts with us."

51.    As of January 31, 2023, SentinelOne had over 10,000 customers, with 905 customers having ARR of $100,000.

52.    Throughout the Relevant Period, the Individual Defendants made false and materially misleading statements, encouraging shareholders to focus on ARR and to view it as an accurate measure of SentinelOne's performance and success.

***Materially False and Misleading Statements***

53.    On June 1, 2022, SentinelOne issued a press release titled "SentinelOne Announces First Quarter Fiscal Year 2023 Financial Results." In the press release, the Company stated, in relevant part:

> SentinelOne, Inc. (NYSE: S) today announced financial results for the first quarter of fiscal year 2023 ended April 30, 2022.
>
> "Our Q1 results demonstrate the combination of a robust demand environment for our leading cybersecurity platform and impressive execution across the board. We once again sustained triple-digit growth with significant margin expansion, added a record number of new customers, and exited the quarter with an extremely strong pipeline," said Tomer Weingarten, CEO of SentinelOne. "We're raising our revenue guidance to nearly triple-digit growth again this fiscal year, which now includes our acquisition of Attivo Networks."
>
> "Our platform unit economics and highly efficient business model uniquely position us to pair hyper growth with meaningful margin expansion and our first quarter results clearly demonstrate this success," said Dave Bernhardt, CFO of

SentinelOne. "I'm most proud of our record gross margins, which expanded double digits year-over-year. This really showcases the strong combination of our expanding product portfolio, data-enabled efficiencies, and operational excellence across SentinelOne. . . ."

**First Quarter Fiscal 2023 Highlights**
*(All metrics are compared to the first quarter of fiscal year 2022 unless otherwise noted)*

- **Total revenue** increased 109% to $78.3 million, compared to $37.4 million.

- **Annualized recurring revenue (ARR)** increased 110% to $339.0 million as of April 30, 2022.

- **Total customer count** grew over 55% to over 7,450 customers as of April 30, 2022. Customers with ARR over $100K grew 113% to 591 as of April 30, 2022. Dollar-based net revenue retention rate was a record 131%.

- **Gross margin:** GAAP gross margin was 65%, compared to 51%. Non- GAAP gross margin was 68%, compared to 53%.

- **Operating margin:** GAAP operating margin was (115)%, compared to (165)%. Non-GAAP operating margin was (73)%, compared to (127)%.

- **Cash, cash equivalents and short-term investments** were $1.6 billion as of April 30, 2022.

54.     The Company also published a letter to its shareholders on June 1, 2022. The letter

stated, in relevant part:

Our first quarter results demonstrate the combination of a robust demand environment for our leading cybersecurity platform and impressive execution across the board. We once again sustained triple-digit revenue and ARR growth with significant margin expansion, added a record number of new customers, and delivered record NRR. . . .Our Singularity XDR platform is stronger than ever, covering the essential enterprise attack surfaces – Endpoint, Cloud, and Identity security. . . .

Our go-to-market teams delivered excellent results to begin our fiscal year. We set a new record in total organic customer additions, even larger than our seasonally strong Q4 FY22. In the first quarter, our ARR grew 100% year-over-year, driven by a combination of new and existing customers. . . .

Our momentum with large enterprises was strong. We continue to see high growth among customers with ARR over $100k, which grew 113% year-over-year to 591.

Our business mix from customers with ARR over $100k continued to increase as a result of a success with larger enterprises, strategic channel partners, and increasing adoption of modules.

55.     On the same day, SentinelOne filed its quarterly report for the quarterly period ended April 30, 2022 on a Form 10-Q with the SEC (the "FY23 Q1 10-Q"). In the FY23 Q1 10-Q, the Company reported that "ARR grew 110% year-over-year to $339.0 million as of April 30, 2022, primarily due to high growth in the number of new customers purchasing our subscriptions and to additional purchases by existing customers."

56.     Furthermore, the FY23 Q1 10-Q stated that as of April 30, 2022, the Company's "disclosure controls and procedures were effective at the reasonable assurance level."

57.     The FY23 Q1 10-Q was signed by Defendant Bernhardt.

58.     On August 31, 2022, SentinelOne issued a press release titled "SentinelOne Announces Second Quarter Fiscal Year 2023 Financial Results." In the press release, the Company stated, in relevant part:

> SentinelOne, Inc. (NYSE: S) today announced financial results for the second quarter of fiscal year 2023 ended July 31, 2022.
>
> "We delivered hyper growth and outperformance across all aspects of our business in Q2 - ARR, revenue, customer growth, net retention, and margins," said Tomer Weingarten, CEO of SentinelOne. "I'm proud of our team's execution despite an evolving macro environment. Through Singularity XDR, we're delivering what enterprises need the most: best-in-class protection and superior platform value."
> "Our business momentum remains extremely strong. We once again delivered a combination of triple-digit growth while steadily moving towards long term profitability. ARR growth accelerated to 122% and non-GAAP operating margins expanded 42 percentage points year-over-year," said Dave Bernhardt, CFO of SentinelOne. "We're raising our full-year growth expectations above and beyond our Q2 outperformance. . . ."
>
> **Second Quarter Fiscal 2023 Highlights**
> *(All metrics are compared to the second quarter of fiscal year 2022 unless otherwise noted)*
>
> - **Total revenue** increased 124% to $102.5 million, compared to $45.8 million.

- **Annualized recurring revenue (ARR)** increased 122% to $438.6 million as of July 31, 2022.

- **Total customer count** grew about 60% to over 8,600 customers as of July 31, 2022. Customers with ARR over $100K grew 117% to 755 as of July 31, 2022. Dollar-based net revenue retention rate was a record 137%.

- **Gross margin:** GAAP gross margin was 65%, compared to 59%. Non- GAAP gross margin was 72%, compared to 62%.

- **Operating margin:** GAAP operating margin was (106)%, compared to (147)%. Non-GAAP operating margin was (57)%, compared to (98)%.

- **Cash, cash equivalents and short-term investments** were $1.2 billion as of July 31, 2022.

59.     The Company also published a letter to its shareholders on August 31, 2022. The letter stated, in relevant part:

> Our second quarter results reflect strong demand for our transformative Singularity XDR Platform. Our ARR grew a remarkable 122% year-over-year to $439 million, marking the sixth consecutive quarter of triple-digit growth. We're delivering substantial growth with significant margin expansion driven by strong unit economics and scalable business model. . . .
>
> We once again achieved record customer growth and expansion, signifying rapid adoption of the Singularity XDR platform around the world. On an organic basis, we added a record number of new customers, including the largest customer contract in SentinelOne's history. Our success with large and medium enterprises remains a bright spot as customers deploy the full breadth of our expanding platform offerings. We're seeing strong evidence of that from the expansion within our existing customer base – our net retention rate reached a new high of 137%. . . .
>
> In the second quarter, we set a new customer growth record by adding over 750 new customers on an organic basis and over 350 customers from the acquisition of Attivo, bringing total quarterly customer adds to over 1,100. Total customer count grew about 60% year-over-year to over 8,600 in the second quarter. We continued to secure both large enterprises and medium-sized business and maintained high win rates across the board.
>
> Our momentum with large enterprises was strong as we achieved higher growth among customers with ARR over $100k, which grew 117% year-over-year to 755. Our business mix from customers with ARR of over $100k continued to increase

as a result of success with larger enterprises, channel ecosystem, and increasing adoption of modules.

60.     The same day, the Company filed its quarterly report for the quarterly period ended July 31, 2022, on a Form 10-Q with the SEC (the "FY23 Q2 10-Q"). In the FY23 Q2 10-Q, the Company reported that "ARR grew 122% year-over-year to $438.6 million as of July 31, 2022, primarily due to high growth in the number of new customers purchasing our subscriptions and to additional purchases by existing customers."

61.     Additionally, the FY23 Q2 10-Q also stated that as of July 31, 2022, the Company's "disclosure controls and procedures were effective at the reasonable assurance level."

62.     The FY23 Q2 10-Q was signed by Defendant Bernhardt.

63.     On December 6, 2022, SentinelOne issued a press release titled "SentinelOne Announces Third Quarter Fiscal Year 2023 Financial Results." In the press release, the Company stated, in relevant part:

> SentinelOne, Inc. (NYSE: S) today announced financial results for the third quarter of fiscal year 2023 ended October 31, 2022.
>
> "We once again delivered triple digit revenue and ARR growth fueled by strong adoption of our Singularity XDR platform across endpoint, cloud, and identity. Cybersecurity is mission-critical, and our Singularity platform is purpose built for leading protection allowing us to deliver superior platform value," said Tomer Weingarten, CEO of SentinelOne. "We're focused on enhancing productivity and continuing to take market share in a dynamic environment."
>
> "We maintained the Rule of 60 again in Q3'2023. These results continue to signify our ability to maintain a balance between compelling top line growth and improved progress towards our long-term profitability targets," said Dave Bernhardt, CFO of SentinelOne. . . ."
>
> **Third Quarter Fiscal 2023 Highlights**
> *(All metrics are compared to the third quarter of fiscal year 2022 unless otherwise noted)*
>
> - **Total revenue** increased 106% to $115.3 million, compared to $56.0 million.

- **Annualized recurring revenue (ARR)** increased 106% to $487.4 million as of October 31, 2022.

- **Total customer count** grew about 55% to over 9,250 customers as of October 31, 2022. Customers with ARR over $100,000 grew nearly 100% to 827 as of October 31, 2022. Dollar-based net revenue retention rate was 134%.

- **Gross margin:** GAAP gross margin was 64%, compared to 64%. Non- GAAP gross margin was 71%, compared to 67%.

- **Operating margin:** GAAP operating margin was (90)%, compared to (120)%. Non-GAAP operating margin was (43)%, compared to (69)%.

- **Cash, cash equivalents, and investments** were $1.2 billion as of October 31, 2022.

64.     The Company also published a letter to its shareholders on December 6, 2022. The shareholder letter stated, in relevant part:

We delivered another quarter of triple-digit revenue and total ARR growth in addition to significant margin expansion. . . .

Our GAAP and non-GAAP gross margin expanded by 0.7 and 5 percentage points year-over-year, respectively. Similarly, our GAAP and non-GAAP operating margin expanded by 30 and 26 percentage points year-over-year. With our fourth quarter guidance, we are on track to deliver a sixth consecutive quarter of over 25 percentage points of non-GAAP operating margin improvement.

In light of persistent macroeconomic uncertainty, we're sharpening our focus on cost management and are calibrating our investments with pace of growth. In the past month, we've taken action to unlock more operational and execution efficiencies by streaming our teams and elevating top business leaders, empowering them to be even more dynamic and nimble. We're focused on improving productivity, velocity, and execution of Sentinels across all aspects of our business. We're confident in our ability to continue elevating our performance. . . .

In the third quarter, our total customer count grew about 55% year-over-year, exceeding 9,250. We added over 600 new customers in the quarter. We continued to secure both large enterprises and medium-sized businesses driven by strong win rates across all competitive situations.

Our momentum with large enterprises was strong as we achieved higher growth among customers with ARR over $100k, which grew 99% year-over-year to 827. Our business mix from customers with ARR of over $100k continued to increase due to success with larger enterprises, channel ecosystem and increasing adoption

20

of modules. . . .

Fiscal third quarter marked our seventh consecutive quarter of triple-digit growth. ARR grew 106% year-over-year to $487 million at the end of our fiscal quarter. Net new ARR was $9 million, as enterprises adjusted to macroeconomic conditions by tightening budgets.

Total revenue grew year-over-year to $115 million in our fiscal third quarter. . . .

65.     The same day, the Company filed its quarterly report for the quarterly period ended October 31, 2022 on a Form 10-Q with the SEC (the "FY23 3Q 10-Q"). The FY23 3Q 10-Q stated that "ARR grew 106% year-over-year to $487.4 million as of October 31, 2022, primarily due to high growth in the number of new customers purchasing our subscriptions and to additional purchases by existing customers."

66.     The FY23 3Q 10-Q also stated that as of October 31, 2022, the Company's "disclosure controls and procedures were effective at the reasonable assurance level."

67.     The FY23 3Q 10-Q was signed by Defendant Bernhardt.

68.     On March 14, 2023, SentinelOne issued a press release titled "SentinelOne Announces Fourth Quarter Fiscal Year 2023 Financial Results." In the press release, the Company stated, in relevant part:

SentinelOne, Inc. (NYSE: S) today announced financial results for the fourth quarter of fiscal year 2023 ended January 31, 2023.

"We continued to deliver leading growth and margin improvement, a result of stronger execution and our competitive position. Our ARR crossed half a billion dollars, and our global customer-base exceeded 10,000 - two major milestones. Our sights are set much higher," said Tomer Weingarten, CEO of SentinelOne. "We continue to strengthen our technology leadership. Once again, we are a leader in Gartner's Magic Quadrant for Endpoint Protection Platform and achieved the top ranking across all three Gartner's Critical Capabilities for Endpoint Protection Platforms."

"Our fourth quarter results exceeded expectations across all key metrics, indicating strength of our competitive position and unit economics," said Dave Bernhardt,

CFO of SentinelOne. "Evident in our fiscal year 2024 outlook, we expect to deliver compelling top line growth with consistent margin improvement. . . ."

**Fourth Quarter Fiscal 2023 Highlights**
*(All metrics are compared to the fourth quarter of fiscal year 2022 unless otherwise noted)*

- **Total revenue** increased 92% to $126.1 million, compared to $65.6 million.

- **Annualized recurring revenue (ARR)** increased 88% to $548.7 million as of January 31, 2023.

- **Total customer count** grew about 50% to over 10,000 customers as of January 31, 2023. Customers with ARR over $100,000 grew 74% to 905 as of January 31, 2023. Dollar-based net revenue retention rate remained above 130%.

- **Gross margin:** GAAP gross margin was 68%, compared to 63%. Non- GAAP gross margin was 75%, compared to 66%.

- **Operating margin:** GAAP operating margin was (79)%, compared to (108)%. Non-GAAP operating margin was (35)%, compared to (66)%.

- **Cash, cash equivalents, and investments** were $1.2 billion as of January 31, 2023.

**Full Year Fiscal 2023 Highlights**
*(All metrics are compared to fiscal year 2022 unless otherwise noted)*

- **Total revenue** increased 106% $422.2 million, compared to $204.8 million.

- **Gross margin:** GAAP gross margin was 66%, compared to 60%. Non- GAAP gross margin was 72%, compared to 63%.

- **Operating margin:** GAAP operating margin was (95)%, compared to (130)%. Non-GAAP operating margin was (49)%, compared to (85)%

69.    In the same press release, the Company reported full fiscal year 2024 revenue guidance of between $631 million and $640 million.

70.    The Company also published a letter to its shareholders on March 14, 2023. The letter stated, among other things:

Our Q4 results demonstrate strong execution and success in delivering high growth with substantial margin improvement. Our market position is strengthening across

22

both endpoint and cloud security. Our ARR per customer expanded, NRR remained about 130%, and our win rates increased. Macroeconomic headwinds remained, yet we delivered excellent quarterly performance that exceeded our expectation across the board. . . .

ARR grew 88% year-over-year to $549 million, crossing the half-a-billion dollar mark. Revenue for fiscal year 2023 grew 106% year-over-year to $422 million. This is tremendous progress in terms of the scale and speed in which we achieved it. Our sights are set much higher. Once again, we exceeded the Rule of 50 in Q4, indicating strong unit economics and scalability of our business model. Our GAAP and non-GAAP gross margin expanded by 5 and 9 percentage points year-over-year, respectively. Similarly, our GAAP and non-GAAP operating margin expanded by 29 and 31 percentage points year-over-year, respectively. We are making meaningful progress toward our profitability targets as we strategically balance investments with the pace of growth. . . .

71.     On March 29, 2023, the Company filed its annual report for the fourth quarter and full year 2023 on a Form 10-K with the SEC (the "2023 10-K"). The 2023 10-K stated that "ARR grew 88% year-over-year to $548.7 million for fiscal 2023, primarily due to high growth in the number of new customers purchasing our subscriptions and to additional purchases by existing customers."

72.     The 2023 10-K also stated that the Company's "internal control over financial reporting was effective as of January 31, 2023."

73.     The 2023 10-K was signed by Defendants Weingarten, Bernhardt, Begley, Hughes, Peek, Pinczuk, Scheinman, Wardi, and Yabuki.

74.     The above statements were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) the Company lacked effective internal controls over accounting and financial reporting; (ii) the Company's ARR was overstated; (iii) the Company's guidance was overstated; and (iv) as a result of the foregoing, the Individual Defendant's positive statements about the Company's business, operations, and prospects were

materially misleading and/or lacked a reasonable basis.

***The Truth Emerges***

75.   Then, the truth was revealed on June 1, 2023, after the market closed, when

SentinelOne published a press release titled "SentinelOne Announces First Quarter Fiscal Year

2024 Financial Results." In the press release, the Company stated, among other things, that:

> SentinelOne, Inc. (NYSE: S) today announced financial results for the first quarter of fiscal year 2024 ended April 30, 2023.
>
> "Macro challenges remained, yet we continued to deliver high growth and margin improvement, demonstrating key strengths across our business. Once again we're leading the industry with the innovation in AI with our recently launched Purple AI: a one-of-a-kind innovation in cybersecurity that empowers enterprises with unparalleled capabilities to offer a real-time, autonomous response against cyber threats," said Tomer Weingarten, CEO of SentinelOne. "We are adapting, and optimizing to empower enterprises with the best security resources and drive progress toward profitability."
>
> "Even in a tough quarter, we achieved our seventh consecutive quarter of over 25 percentage points year-over-year improvement in operating margins," said Dave Bernhardt, CFO of SentinelOne. "We're committed to selectively investing in key growth areas, managing our cost structure, and achieving our profitability targets. . . ."
>
> **First Quarter Fiscal Year 2024 Highlights**
> *(All metrics are compared to the first quarter of fiscal year 2023 unless otherwise noted)*
>
> • **Total revenue** increased 70% to $133.4 million, compared to $78.3 million.
>
> • **Annualized recurring revenue (ARR)** increased 75% to $563.6 million as of April 30, 2023. ***As a result of a change in methodology and correction of historical inaccuracies, which we further describe in our letter to shareholders, we made a one-time adjustment to ARR of $27.0 million or approximately 5% of total ARR, which we reflected in our total ARR as of April 30, 2023. ARR for the prior period in fiscal 2023 has been adjusted based on the same percentage adjustment rate identified in the first quarter of fiscal 2024.***
>
> • **Total customer count** grew approximately 43% to over 10,680 customers as of April 30, 2023. Customers with ARR over $100,000 grew 61% to 917 as of April 30, 2023. Dollar-based net revenue retention rate (NRR) remained above

125%. Customers with ARR over $100,000 and NRR reflect the adjustment to ARR described above.

- **Gross margin:** GAAP gross margin was 68%, compared to 65%. Non- GAAP gross margin was 75%, compared to 68%.

- **Operating margin:** GAAP operating margin was (86)%, compared to (115)%. Non-GAAP operating margin was (38)%, compared to (73)%.

- **Cash, cash equivalents, and investments** were $1.1 billion as of April 30, 2023.

(Emphasis added).

76.    The press release went on to reveal the reasoning behind the adjustment to ARR,

stating that:

As discussed above, in the first quarter of fiscal 2024 we adjusted our historical ARR (i) due to a change in the methodology for reflecting consumption and usage based agreements as part of ARR to reflect committed contract values as opposed to based on consumption and usage as a result of expected lower usage and consumption trends resulting from the current macro environment and (ii) to correct some historical recording inaccuracies relating to ARR on certain contracts that were discovered as part of our review of ARR in the first quarter of fiscal 2024.

77.    In the same press release, the Company also revised its full fiscal year 2024 revenue

guidance downward to a range of $590 million to $600 million.

78.    The same day, SentinelOne published a shareholder letter further explaining the

ARR corrections. The shareholder letter stated, in relevant part:

Despite many underlying business strengths, our Q1 topline growth did not meet our expectations. Macroeconomic pressures continue to impact deal sizes, sales cycles, and pipeline conversion rates. While not entirely new, the impact from these factors was more pronounced in Q1. Together, these evolving dynamics also impacted our expectations for Q2 and fiscal year 24. We now expect full year revenue to grow 41% at the midpoint. . . .

In light of the current macroeconomic conditions, we've seen lower usage and consumption trends by certain large customers. In order to reduce ARR volatility from changes in usage-based consumption and better align ARR with revenue, we changed the methodology for calculating ARR for consumption and usage-based agreements to reflect committed contract values. We also correct some historical

recording inaccuracies relating to ARR classifications of certain contracts that we discovered as part of our review of ARR. The change in methodology and correction was reflect as an ARR reduction of $27 million or approximately 5% of total ARR as of Q4 FY23, as well as comparable adjustment to the remaining quarters in fiscal year 2023. . . .

**Annualized Recurring Revenue (ARR) & Revenue**

ARR grew 75% year-over-year to $564 million at the end of Q1, which reflects the one-time adjustment to both the current and the prior year period. In light of the current macro environment, we expect these lower usage and consumption trends to persist. Due to this new dynamic, we have changed the methodology for calculating ARR for consumption and usage-based agreements to reflect committed contract values. This provides a cleaner view of growth for fiscal 24 and beyond. By making this change now, we expect ARR and revenue to be more closely aligned. ***As we reviewed the methodology, we also discovered historical upsell and renewal recording inaccuracies relating to ARR on certain subscription and consumption contracts, which are now corrected.***

***Overall, this adjustment resulted in a one-time ARR reduction of $27 million or approximately 5% of ARR, resulting in Q4 fiscal '23 ending ARR of $522 million. We are applying a comparable estimated adjustment to the remaining quarters in fiscal year 23, which we believe is a reasonable approximation of the impact in those periods.*** This adjustment did not impact historical revenue or total bookings.

(Emphasis added).

79.     On this news, SentinelOne's stock price fell over thirty-five percent, or $7.28 per share, to close at $13.44 per share on June 2, 2023.

*Insider Sales*

80.     During the Relevant Period, Defendants Weingarten and Bernhardt each made unusually timed sales of SentinelOne's common stock while in possession of material non-public information concerning the Company's financial condition and business prospects.

81.     Indeed, starting on August 8, 2022, and throughout the Relevant Period, Defendant Weingarten sold approximately 1,420,447 of his shares of SentinelOne's common stock at artificially inflated prices, thereby receiving $22,817,766 in proceeds.

82.     Furthermore, Defendant Bernhardt sold approximately 44,524 of his shares of SentinelOne common stock at artificially inflated prices throughout the Relevant Period, receiving proceeds of $840,573.

***Harm to the Company***

83.     As a direct and proximate result of the Individual Defendants' misconduct, SentinelOne has lost and expended, and will lose and expend, millions of dollars.

84.     Such expenditures include, but are not limited to, the legal fees associated with the Securities Class Action filed against the Company and Defendants Weingarten and Bernhardt, and amounts paid to outside lawyers, accountants, and investigators in connection therewith.

85.     Furthermore, the Securities Class Action has exposed the Company to massive class-wide liability.

<u>**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**</u>

86.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

87.     SentinelOne is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

88.     Plaintiff is a current shareholder of SentinelOne and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

89.     A pre-suit demand on the Board of SentinelOne is futile and, therefore, excused. At the time this action was commenced, the seven-person Board consisted of Individual

Defendants Begley, Hughes, Peek, Scheinman, Wardi, Weingarten, and Pinczuk (the "Director Defendants"). As set forth below, all seven Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action because they face a substantial likelihood of liability for the misconduct alleged herein. Therefore, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

90.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

91.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

92.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

93.     All seven of the Director Defendants signed the 2023 10-K.

94.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

95.     Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

96.     Defendants Begley, Hughes, and Peek (the "Audit Defendants") serve on the Company's Audit Committee, and pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial reporting and the underlying internal controls and procedures over financial reporting. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business, finances, and operations, as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

97.     The Director Defendants, as members of the Board, were and are subject to the Company's Codes of Conduct. The Codes of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to the Company's standards of business conduct. The Director Defendants violated the Codes of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Codes of Conduct, they face a substantial likelihood of liability

for breaching their fiduciary duties, and therefore demand upon them is futile.

98.    Accordingly, a pre-suit demand on the Board is futile and excused.

## COUNT I

### Against the Individual Defendants for Violations of § 10(b)
### of the Exchange Act, 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5

99.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

101.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

102.    The Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

103.    The Individual Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of SentinelOne were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated, or acquiesced in the

issuance or dissemination of such statements or documents as primary violations of the securities laws.

104.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of SentinelOne, their control over, and/or receipt and/or modification of SentinelOne's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning SentinelOne, participated in the fraudulent scheme alleged herein.

105.    As a result of the foregoing, the market price of SentinelOne common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of SentinelOne common stock in purchasing SentinelOne common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

106.    In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Class Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

## COUNT II

### Against the Individual Defendants for Breach of Fiduciary Duty

107.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

108.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation

of good faith, fair dealing, loyalty, and due care.

109.   The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

110.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

111.   As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

112.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT III

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

115.    Plaintiff on behalf of SentinelOne has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Unjust Enrichment

116.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, SentinelOne.

118.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from SentinelOne that was tied to the performance or artificially inflated valuation of SentinelOne, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

119.     Plaintiff, as a shareholder and a representative of SentinelOne, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

120.     Plaintiff on behalf of SentinelOne has no adequate remedy at law.

## COUNT V

### Against the Individual Defendants for Waste of Corporate Assets

121.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.   It resulted in continuous, connected, and ongoing harm to the Company.

123.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending against the Securities Class Action.

124.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

125.     Plaintiff on behalf SentinelOne has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein,

together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.     Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.     Awarding punitive damages;

D.     Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 10, 2024

**RIGRODSKY LAW, P.A.**

By:  */s/ Gina M. Serra*
    Seth D. Rigrodsky (#3147)
    Gina M. Serra (#5387)
    Herbert W. Mondros (#3308)
    300 Delaware Avenue, Suite 210
    Wilmington, DE 19801

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085

    Telephone: (302) 295-5310
    Facsimile: (302) 654-7530
    sdr@rl-legal.com
    gms@rl-legal.com
    hwm@rl-legal.com

    *Attorneys for Plaintiff*